**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**TAMMY RICHARDS**,

            Plaintiff,

            v.

**MONMOUTH COUNTY VOCATIONAL SCHOOL DISTRICT,** *et al.*,

            Defendants

Civil Action No. 24-7325 (ZNQ) (RLS)

**OPINION**

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon a Motion to Dismiss the Amended Complaint filed by Defendants Monmouth County Vocational School District ("MCVSD") and Monmouth County Vocational School District Board of Education (the "Board") (collectively, "Defendants").[1] (the "Motion," ECF No. 22.)  Defendants filed a brief in support.  ("Moving Br.," ECF No. 22-1.)  Plaintiff Tammy Richards ("Plaintiff") filed a brief in opposition ("Opp'n Br.," ECF No. 23), to which Defendants replied ("Reply Br.," ECF No. 24).

    The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' Motion.

---

[1] The Amended Complaint again names as an individual defendant Sharon Bryant, the Principal of Biotechnology High School.  It appears, however, that despite multiple attempts, Plaintiff has been unable to successfully serve Bryant (*see* ECF No. 7), and no answer or motion has been filed with this Court on her behalf.

1

I.      **BACKGROUND AND PROCEDURAL HISTORY**

This matter stems from an employment dispute. Plaintiff is a former guidance counselor at Biotechnology High School ("BHS") in Freehold. (Am. Compl. ¶ 17.) Plaintiff began working at BHS during the 2019–2020 school year and received a "Highly Effective" performance rating[2]. (*Id.* ¶¶ 17, 19, 21.) MCVSD renewed Plaintiff's employment contract for the 2020–2021 school year and named her "2021 Education Specialist of the Year." (*Id.* ¶ 24.) Thereafter, MCVSD renewed Plaintiff's contract for the 2021–2022 school year. (*Id.*)

After the death of a close friend in September 2021, Plaintiff began to experience a sudden and severe onset of mania, depression, and insomnia.[3] (*Id.* ¶ 25.) Plaintiff's psychiatrist recommended that she take an immediate medical leave of absence and enter an intensive outpatient program to treat her symptoms. (*Id.* ¶ 26.) In light of her psychiatrist's medical advice, Plaintiff informed BHS's principal Sharon Bryant of her intention to take an immediate FMLA leave beginning on October 1, 2021. (*Id.* ¶ 27.) Because of the stigma associated with mental illness in the workplace, Plaintiff did not disclose her medical diagnosis nor the anticipated length of her medical leave with Bryant. (*Id.* ¶¶ 28, 29.) MCVSD approved Plaintiff's FMLA leave request, and Plaintiff provided MCVSD with medical documentation substantiating her need to remain on leave until December 14, 2021. (*Id.* 31.)

Plaintiff returned to work on December 15, 2021. (*Id.* ¶ 32.) Shortly after Plaintiff's return, Defendants began a pattern of alleged willful, deliberate, and targeted retaliation against her for exercising her rights under the FMLA. (*Id.* ¶ 34.)

---

[2] A performance rating is based on a formal evaluation of six categories: professional knowledge; program planning and management; program delivery; assessment; communication and collaboration; and professionalism. (Am. Compl. ¶ 36.)
[3] Plaintiff was also diagnosed with bipolar disorder and prescribed medication while she participated in an intensive outpatient program. (Am. Compl. ¶ 32 n.1.)

      **A.**      **PERFORMANCE REPORTS**

MCVSD subjects non-tenured and contracted employees to three formal observations per year and uses those observations to generate a cumulative rating in an employee's annual Education Specialist Performance Report ("performance report"). (*Id.* ¶ 37.)

On January 18, 2022, Bryant rated Plaintiff's program planning and management, program delivery, communication and collaboration, and professionalism as "partially effective" during a formal observation.[4] (*Id.* ¶ 38.) Bryant took issue with Plaintiff's failure: (1) to schedule the administration of New Jersey's "Start Strong Assessment" before she went out on leave; (2) to implement 504 Plans before she went out on leave; (3) to create Student Growth and Objectives ("SGOs") plans in the fall; and (4) to write letters of recommendation for seniors. (*Id.* ¶ 39.)

Plaintiff asserts that MCVSD had a legal obligation to delegate or reassign all of her duties while she was out on leave. (*Id.* ¶ 41.) Additionally, Plaintiff ensures that Bryant, her replacement, and BHS's Student Assistant Coordinator "had all of the tools, training, and resources necessary to administer" the Start Strong Assessment. (*Id.* ¶ 42.) Furthermore, Plaintiff maintains that the process for implementing 504 plans, creating SGOs, and writing letters of recommendations takes months, and that she could not have been reasonably expected to complete such between the first day of school (September 8, 2021) and the first day of her FMLA leave (October 1, 2021). (*Id.* ¶ 43.) Despite Bryant's evaluation, Plaintiff was determined to exceed expectations in her role and achieved an "effective" rating in each category in a subsequent formal evaluation on February 21, 2022. (*Id.* ¶¶ 49, 50.)

On March 4, 2022, Plaintiff emailed Bryant and informed her that Plaintiff had received a summons from the Monmouth County Superior Court directing her to report for jury selection on

---

[4] Bryant did not actually observe Plaintiff's work performance on the date indicated in the performance report (January 13, 2022). (Am. Compl ¶ 44.)

3

March 7.  (*Id.* ¶¶ 51, 52.)  Bryant did not respond.  (*Id.* ¶ 52.)  Plaintiff reported to jury duty and served as a juror until the trial concluded on March 18, 2022.[5]  (*Id.* ¶¶ 53, 54.)

On April 1, 2022, the Director of School Counseling, Joseph Senerchia, rated Plaintiff's professional knowledge, program planning and management, and program delivery as "partially effective" in Plaintiff's third formal observation.  (*Id.* ¶ 56.)  Senerchia raised the following issues with Plaintiff: (1) her failure to conduct a training session for MCVSD's administration of the New Jersey NJGPA assessment on March 8, 2022; (2) her failure to review training materials for the NJGPA with staff; and (3) her unavailability for the entire duration of NJGPA testing.  (*Id.* ¶ 57.)  Plaintiff, however, was unable to conduct the March 8 training because she had jury duty.  (*Id.* ¶ 58.)  Even despite jury duty, Plaintiff asserts that she carved out time to conduct training and meet with staff to ensure that MCVSD was able to successfully administer the NJGPA on March 14.  (*Id.*)

On April 8, 2022, Bryant issued Plaintiff another performance report indicating that Plaintiff was being "recommended for dismissal/non-renewal."  (*Id.* ¶ 62.)  That same day, Plaintiff met with Bryant to discuss the performance report and "confirmed that [Bryant] had made a *recommendation* to [the Board] to not renew Plaintiff's contract for the following school year."  (*Id.* ¶ 63, 64 (emphasis in original).)  Bryant's use of the term "recommendation" led Plaintiff to believe that the non-renewal recommendation was not final but was instead subject to further review and approval by the Board.  (*Id.* ¶ 65.)

On April 13, 2022, Plaintiff received a formal Nonrenewal Notice indicating that Plaintiff could request a written statement of reasons for the non-renewal.  (*Id.* ¶ 69.)  The Nonrenewal Notice also informed Plaintiff that she was entitled to a hearing before the Board.  (*Id.*)  Plaintiff

---

[5] Plaintiff reported to work each day that the court was not in session.  She also reported to work before and after court proceedings, where possible.  (Am. Compl. ¶ 55.)

4

then requested a written statement of reasons so that she could prepare for a hearing before the Board. (*Id.* ¶ 73.) Plaintiff received the requested statement of reasons on May 3, 2022. (*Id.* ¶ 74.) Thereafter, Plaintiff requested a hearing, which took place on June 28, 2022. (*Id.* ¶ 75.)

At the hearing, Plaintiff presented testimony from two parents, two students, and MCVSD's International Baccalaureate Coordinator, each of whom advocated for Plaintiff's reinstatement. (*Id.* ¶ 78.) Even though other hearings conducted by the Board normally last several hours or days, Plaintiff's hearing lasted just fifteen minutes. (*Id.* ¶¶ 78–79.) The Board ultimately accepted Bryant's recommendation. (*Id.* ¶ 79.) Plaintiff worked her last day for Defendants on June 30, 2022. (*Id.* ¶ 82.)

### B. PROCEDURAL HISTORY

On June 27, 2024, Plaintiff filed a three-count Complaint alleging: (1) retaliation and interference with rights, in violation of FMLA, 29 U.S.C. § 2615 (Count One); (2) disability discrimination, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12(a) (Count 2); and (3) retaliation, in violation of NJLAD, N.J.S.A. 10:5-12(d) (Count Three). (ECF No. 1.)

On August 7, 2024, Defendants filed a Motion to Dismiss the Complaint. (ECF No. 8.) Thereafter, the Court granted the motion and dismissed the Complaint without prejudice, with leave to amend to remedy identified deficiencies. (ECF Nos. 16, 17.)

On April 15, 2025, Plaintiff filed the Amended Complaint asserting the same three claims. (ECF No. 19.)[6]

---

[6] Plaintiff filed the Amended Complaint, then filed a Corrected Amended Complaint immediately thereafter. The Court is treating the Corrected Amended Complaint (ECF No. 19) as the operative pleading. (*See* ECF Nos. 18, 19, 21)

## II. SUBJECT MATTER JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 based on the Amended Complaint's claims under federal law. The Court also has diversity jurisdiction based on the diversity of the parties and because the matter in controversy exceeds $75,000.

## III. LEGAL STANDARD

A district court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. When considering a motion under 12(b)(6), the "defendant bears the burden of showing that no claim has been presented." *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Moreover, the court must accept as true all the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). "However, an exception to the general rule is that a

'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

## IV.     DISCUSSION

Defendants again move to dismiss on the basis that all three claims are time barred. Defendants contend that: (1) Count One is time barred because Plaintiff did not allege that Defendants' interference or retaliation was knowingly in violation of the FMLA's statutory protections (Moving Br. at 22–28); and (2) Counts Two and Three are time barred by the NJLAD's two-year statute of limitations (*Id.* at 28–31.)  Defendants maintain that the statute of limitations began to run on April 13, 2022—the date Plaintiff acknowledged receipt of a written notice from the District's Superintendent that Plaintiff's contract was not going to be renewed (the "Nonrenewal Notice"). (*See id.* at 5.)  Plaintiff continues to insist that her claims began to accrue on June 28, 2022, not April 13, 2022. Separately, she argues that her FMLA claim asserts willful retaliation, for which the statute of limitations is three years rather than two.  (*See* Opp'n Br. at 1.)

### A.     COUNT ONE – FMLA

Generally, "[t]he default statute of limitations under the FMLA is two years." *Plitsas v. Fed. Exp., Inc.*, Civ. No. 07-5439, 2010 WL 1644056, at *5 (D.N.J. Apr. 22, 2010) (citing 29 U.S.C. § 2617(c)(1)).  However, where a plaintiff can show that an employer willfully violated her FMLA rights, the statute of limitations is extended to three years. *Hudson v. Indep. Blue Cross, LLC*, Civ. No. 18-3631, 2019 WL 1045303, at *2 (E.D. Pa. Mar. 5, 2019) (citing 29 U.S.C. § 2617(c)(2)).  To plausibly plead willfulness, an employee must adequately allege that the employer's interference or retaliation was knowingly in violation of the FMLA's statutory protections, or the employer acted with reckless regard for the same. *Schiedt v. Donahoe*, Civ. No.

7

13-836, 2014 WL 6991982, at *5 (D.N.J. Dec. 10, 2014) (on motion to dismiss); *see also Durham v. Atl. City Elec. Co.*, Civ. No. 08-1120, 2010 WL 3906673, at *9 (D.N.J. Sept. 28, 2010) (on motion for summary judgment).

"In common usage the word 'willful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional.'" *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (citing Roget's International Thesaurus § 622.7, p. 479; § 653.9, p. 501 (4th ed. 1977)). "[I]t is generally understood to refer to conduct that is not merely negligent." *Id.*

Here, the Amended Complaint clearly alleges that "Defendants' actions were done willfully, knowingly, intentionally and discriminatorily, and also in retaliation for [Plaintiff] exercising her rights under the FMLA." (Am. Compl. ¶ 87.) Plaintiff cites decisions from district courts in Pennsylvania that have deemed that inclusion of this language is enough to survive a motion to dismiss. *See Caucci v. Prison Health Servs., Inc.*, 153 F. Supp 2d 605, 609 (E.D. Pa. 2001) ("The Amended Complaint alleges that Defendant's conduct was 'willful, intentional, and in flagrant disregard of the provisions of the FMLA.' Under the liberal pleading standards of the Federal Rules of Civil Procedure, this is sufficient to plead willfulness and trigger the three-year statute of limitations."); *Ridner v. Salisbury Behav. Health, Inc.*, Civ. No. 11-572, 2011 WL 5089806, at *4 (M.D. Pa. Sept. 28, 2011), *report and recommendation adopted*, Civ. No. 11-572, 2011 WL 5314187 (M.D. Pa. Oct. 25, 2011) ("Plaintiff alleges in her complaint that defendant's actions in terminating her were done 'knowingly, intentionally and discriminatorily,' and also in retaliation for exercising her rights under the FMLA. Plaintiff has therefore successfully alleged a willful violation of the FMLA, and the three-year statutory period applies."); *Yevak v. Nilfisk-Advance, Inc.*, Civ. No. 15-5709, 2016 WL 1359745, at *3 (E.D. Pa. Apr. 6, 2016) ("allegations that a defendant's conduct was 'willful, intentional, and in flagrant disregard of the provisions of

the FMLA' are 'sufficient to plead willfulness and trigger the three-year statute of limitations' under the 'liberal pleading standards of the Federal Rules of Civil Procedure'").

The Third Circuit has yet to provide specific guidance as to the pleading standard that must be met to assert willfulness in the face of a challenge based on a statute of limitations defense. District courts in New Jersey appear to have been more reluctant than those in Pennsylvania to accept bare allegations of willfulness. *See Scheidt*, 2014 WL 6991982, at *5 (granting motion to dismiss); *Chance v. St. Michael's Med. Ctr.*, Civ. No. 22-4526, 2023 WL 157585, at *4 (D.N.J. Jan. 11, 2023) (granting motion to dismiss); *Rodriguez v. Stanley*, Civ. No. 19-9104, 2020 WL 7338221, at *7 (D.N.J. Dec. 14, 2020) (granting motion to dismiss); *Abbott v. Verizon Commun. of New Jersey*, Civ. No. 11-421, 2013 WL 594466, at *8 (D.N.J. Feb. 15, 2013) (granting motion to dismiss).

The Eighth Circuit Court of Appeals has addressed this issue and persuasively distinguishes between a plaintiff's duties when he is plausibly pleading a required element of a claim from a plaintiff's duties when (as here) he is pleading sufficiently to avoid an affirmative defense. In *Weatherly v. Ford Motor Company*, that Court reasoned as follows.

> We think that Weatherly's allegations are sufficient to support a claim, which is all he must show to survive a Rule 12(b)(6) motion to dismiss. FMLA claims like those Weatherly asserts do not depend on whether a defendant acted willfully because a defendant's willfulness is not an element of the claim. A defendant may, of course, raise the applicable statute of limitations as an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), and it is true that courts may sometimes dismiss claims properly under Rule 12(b)(6) "as barred by a statute of limitations if the complaint itself shows that the claim is time-barred." *See Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897 (8th Cir. 2015). But it is also true that, in general, a defendant cannot render a complaint defective by pleading an affirmative defense, and so the possible existence of a limitations defense "is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." *See Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008).

9

So the relevant question is how a complaint might establish a limitations defense. Ford invokes *Crugher v. Prelesnik*, 761 F.3d 610 (6th Cir. 2014), which similarly involved an FMLA claim filed more than two years but less than three years after the claim accrued. In that case, the court rejected the argument that the plaintiff had alleged a willful FMLA violation because the allegations in the complaint were insufficient to "make the state-of-mind allegation 'plausible on its face,'" *id.* at 617, a pleading standard for gauging the sufficiency of a complaint that the Supreme Court introduced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). It's unclear whether the parties or the court ever questioned whether *Twombly* and *Iqbal* supply the standard governing the sufficiency of an allegation relating to an affirmative defense and not to the substance of a claim.

Other cases are more illuminating and persuasive than *Crugher*. For example, in *Fernandez v. Clean House, LLC*, 883 F.3d 1296 (10th Cir. 2018), a plaintiff brought a claim under the Fair Labor Standards Act, a statute that has a two-tiered limitations scheme identical to the one in the FMLA—the limitations period for ordinary violations is two years and for willful ones it is three years. *See id.* at 1298; *see also* 29 U.S.C. § 255(a). The plaintiffs' claims accrued more than two years but less than three years before they filed suit. *Fernandez*, 883 F.3d at 1298. The district court dismissed the claims on the ground that the plaintiffs had not supported their allegations of willfulness with sufficiently specific facts. *See id.*

The Tenth Circuit reversed. It explained that the district court and the defendants had "fail[ed] to recognize that willfulness is not relevant to the elements of Plaintiffs' claims but only to the statute-of-limitations defense," and under the Federal Rules of Civil Procedure, it is the defendant's responsibility to raise and prove that matter, not the plaintiff's responsibility to refute it in his complaint. The court held that plaintiffs do not need to anticipate in the complaint that a defendant might raise a particular affirmative defense, and what's more plaintiffs need not even respond to an answer raising such a defense with additional pleadings. While it recognized that it may be proper on occasion to dismiss a claim on the pleadings based on an affirmative defense, the court said that was appropriate "only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." In other words, the complaint would have to admit that the violations were not willful; it wasn't enough that it did not plead facts sufficient to show that it was willful. *Id.* at 1298–99. In sum, the defendant would have to wait until summary judgment to press the defense.

10

> In *Xechem, Inc. v. Bristol-Myers Squibb Co.*, Judge Easterbrook, writing for the court, likewise held that "plaintiffs need not anticipate and attempt to plead around all potential defenses," and so "[c]omplaints need not contain *any* information about defenses and may not be dismissed for that omission." 372 F.3d 899, 901 (7th Cir. 2004) (emphasis in original); *see also Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Instead, it's "[o]nly when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Xechem, Inc.*, 372 F.3d at 901. That court has doubled down on this view after *Twombly* and *Iqbal*, noting that neither decision scrapped the rule that complaints need not anticipate affirmative defenses. *See Levin v. Miller*, 763 F.3d 667, 671 (7th Cir. 2014).
>
> The Tenth and Seventh Circuits' cases are more persuasive. It may well be that Weatherly's allegations of willfulness (or more accurately the allegations from which Weatherly thinks willfulness may be inferred) do not plausibly assert that Ford committed willful FMLA violations. But we need not reach that question. The important thing is that Weatherly's complaint does not plead him out of court by establishing that the alleged violations were not willful. The complaint leaves ample ground from which proof of willfulness may grow; there may be evidence that Ford's failure to establish and enforce certain policies or perform certain training was willful rather than negligent. If at summary judgment Weatherly cannot muster sufficient evidence to permit a reasonable factfinder to find that Ford acted willfully, then the district court can side with Ford on its limitations defense. But at the pleadings stage, Weatherly has alleged all that the law requires.

994 F.3d 940, 942–44 (8th Cir. 2021).  Here, this Court similarly finds that Plaintiff has plead "all that the law requires" to overcome Defendants' motion to dismiss premised on the affirmative defense of the applicable statute of limitations.  Accordingly, that portion of Defendants' motion will be DENIED.

    **B.**    **COUNTS TWO AND THREE – NJLAD**

In the Motion, Defendants seek dismissal of Plaintiff's NJLAD claims as time barred. (Moving Br. at 28–30.)  Thus, Defendants contend that Counts Two and Three—those invoking the NJLAD—should be dismissed.  (*Id.*)

11

"Technically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (internal citation omitted). The Third Circuit does, however, allow a defendant to raise a statute of limitations defense in a Rule 12(b)(6) motion if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* (internal citation omitted). The time bar must be "apparent on the face of the complaint" to afford the basis for a dismissal of the complaint under Rule 12(b)(6). *Id.*

As previously discussed in the Court's opinion granting Defendants' prior motion to dismiss, the Notice of Renewal is appropriately considered at the motion to dismiss stage. (ECF No. 16 at 6–7.) The Nonrenewal Notice states:

> I regret to inform you that your employment contract with the Monmouth County Vocational School District Board of Education will not be renewed for the 2022-2023 school year and that your employment with the Board of Education will end effective June 30, 2022. This letter shall constitute notice of non-renewal in accordance with the law.
>
> Additionally, you have the right to request a statement of reasons as to why your contract was not renewed; such a request must be made in writing addressed to the undersigned no more than 15 days after receipt of this letter notice. After receiving the statement of reasons for non-renewal, you may request an informal appearance before the Board of Education. This request must be submitted in writing within ten (10) calendar days of receipt of my statement of reasons.
>
> Enclosed is information concerning the continuation of health benefits through COBRA. Your health benefits will terminate on June 30, 2022 unless you qualify and participate in COBRA.
>
> Thank you for your work on behalf of the students of the Monmouth County Vocational School District Board of Education. If you have any questions, please do not hesitate to contact this office. We wish you much success in your future endeavors.

(Nonrenewal Notice.)

"The current statute of limitations for actions under NJLAD is two years." *Galm v. Gloucester Cnty. Coll.*, Civ. No. 06-3333, 2007 WL 2442343, at *4 (D.N.J. Aug. 22, 2007). "In employment discrimination actions, the limitations period begins with the time of the discriminatory act." *Hanani v. N.J. Dep't of Envtl. Prot.*, 205 F. App'x 71, 76 (3d Cir. 2006) (internal quotations and citations omitted). As such, an employee's cause of action for an NJLAD claim begins to accrue upon the employee's receipt of a termination notice.

As this Court previously held, the Court "sees no indicia that [the Notice] . . . should be . . . construed" as a "mere recommendation." (ECF No. 16 at 8.) The first paragraph clearly articulates that Plaintiff's employment with the MCVSD would not be renewed for the following school year and that the Notice "shall constitute notice of non-renewal in accordance with the law." The inclusion of Plaintiff's Continuation of Health Coverage ("COBRA") benefits "also implies finality." (*Id.*) The final paragraph further reiterates the finality of the decision by expressing gratitude to Plaintiff for her time with the MCVSD and wishing her luck in her future endeavors.[7]

The Amended Complaint adds context surrounding Plaintiff's interpretation of the Nonrenewal Notice, but not enough to survive a motion to dismiss. Plaintiff asserts that Bryant's April 8, 2022 performance report stated that Plaintiff was being "recommended for dismissal/non-renewal." (Am. Compl. ¶ 62.) That same day, Bryant met with Plaintiff and "confirmed that she

---

[7] In the Opposition Brief, Plaintiff attempts to compare the Rice Notice she received to the nonrenewal notice the plaintiff received in *Clark v. Winslow Twp. Bd. of Educ.*, Civ. No. 10-4342, 2011 WL 550625 (D.N.J. Feb. 9, 2011). This is misleading. Of course the Rice Notice "is drastically different from" the nonrenewal notice in *Clark*. (*See* Opp'n Br. at 17.) While it is true that the Rice Notice indicated that MCVSD "may discuss matters . . . which may affect the terms and conditions of [Plaintiff's] employment," Plaintiff's Nonrenewal Notice is actually more clear than the *Clark* nonrenewal notice. Not once did the term "recommendation" appear in Plaintiff's Nonrenewal Notice. Comparatively, the nonrenewal notice in *Clark*—which was deemed sufficiently unambiguous so as to put the plaintiff on notice of her termination—included the following language: "the Board will *consider* a *recommendation* to approve the renewal of employment contracts"; "[y]ou[r] name will not be included in this *recommendation*, and, as such, you *will be* deemed non-renewed." *Clark*, 2011 WL 550625, at *1 (emphasis added).

had made a recommendation to [the Board] to not renew Plaintiff's contract." (*Id.* ¶ 63.) These interactions—interactions that occurred prior to Plaintiff's receipt of the Nonrenewal Notice on April 13, 2022—do not change the plain text of the Nonrenewal Notice. As Plaintiff concedes in her own Opposition Brief, "the language included in a termination notice is crucial for determining the accrual date for NJLAD claims." (Opp'n Br. at 16.) The Nonrenewal Notice was clear: Plaintiff was terminated effective June 30, 2022, and would not be employed by MCVSD the following school year. *See Clark v. Winslow Twp. Bd. of Educ.*, Civ. No. 10-4342, 2011 WL 550625, at *3 (D.N.J. Feb. 9, 2011) ("New Jersey law is clear. [Plaintiff's] nonrenewal must have occurred prior to the Board of Education hearing because the hearing must take place after a statement of reasons for the nonrenewal is provided.") (citing N.J.S.A. 18A:27–3.2; N.J.A.C. 6A:32–4.6(a)); *Yousef v. Capital One Servs., Inc.*, Civ. No. 11-1687, 2011 WL 3739362, at *9 (D.N.J. Aug. 24, 2011) (the "strong language provided in [plaintiff's] termination notice was sufficiently clear and unambiguous in notifying [plaintiff] that [his employer] fully intended to terminate his employment" on a specific date).

As such, even when taking all of Plaintiff's allegations as true, Counts Two and Three are time barred. Counts Two and Three will therefore be **DISMISSED WITHOUT PREJUDICE**.

## V. **CONCLUSION**

For the reasons stated above, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' Motion. Counts Two and Three will be dismissed without prejudice. Plaintiff will be granted leave to file a Second Amended Complaint within 30 days. If Plaintiff does not file a Second Amended Complaint by that date or does not remedy the identified defects, Counts Two and Three of the Amended Complaint may be dismissed with prejudice. An appropriate Order will follow.

Date: December 16, 2025

                                               s/ Zahid N. Quraishi
                                               **ZAHID N. QURAISHI**
                                               **UNITED STATES DISTRICT JUDGE**